IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DWAYNE E. FREEMAN,                )
                                  )
                Plaintiff,        )
                                  )
        v.                        )
                                  )   Case No. 1:25CV237
SGT KIM, *et al.*,                )
                                  )
                Defendants.       )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on a Complaint [Doc. #2] and Supplement [Doc. #3] filed by Plaintiff Dwayne Freeman asserting a claim under 42 U.S.C. § 1983 against Sergeant Kim, Sergeant Laura, and Lieutenant Knight of the Scotland County Sheriff's Department. In conjunction with the Complaint, Plaintiff also submitted an Application to Proceed *In Forma Pauperis*. For the reasons set out below, this action should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

"The federal in forma pauperis statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts 'solely because his poverty makes it impossible for him to pay or secure the costs.'" Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 953 (4th Cir. 1995) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 342 (1948)). "Dispensing with filing fees, however, [is] not without its problems. Parties proceeding under the statute d[o] not face the same financial constraints as ordinary litigants. In particular, litigants suing in forma pauperis d[o]

not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. Federal Med. Ctr. Butner, 376 F.3d 252, 255 (4th Cir. 2004).

To address this concern, the in forma pauperis statute provides that "the court shall dismiss the case at any time if the court determines that – . . . (B) the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

As to the first of these grounds for dismissal, the United States Supreme Court has explained that "a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "The word 'frivolous' is inherently elastic and not susceptible to categorical definition. . . . The term's capaciousness directs lower courts to conduct a flexible analysis, in light of the totality of the circumstances, of all factors bearing upon the frivolity of a claim." Nagy, 376 F.3d at 256-57 (some internal quotation marks omitted).

As to the second grounds for dismissal, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by

2

mere conclusory statements, do not suffice." Id.[1]  As part of this review, the Court may anticipate affirmative defenses which are clear on the face of the complaint. Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).

The third ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity).

Here, Plaintiff appears to be raising the same claims that were addressed in prior cases in this District, Case No. 1:23CV294 and Case No. 1:24CV204. On review, the claims in the present case are the same as the claims addressed in 1:23CV294 and 1:24CV204. Those cases were dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted, and the same analysis would apply in the present case. As discussed in 1:23CV294, Plaintiff has not set out factual allegations that would plausibly allege a violation of his constitutional rights by these Defendants. This case should be dismissed pursuant to

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint).

28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted, based on the analysis set out in 1:23CV294, and as set out below.

In the Complaint, Plaintiff alleges that on May 3, 2018, he "went to court on a probation violation of a misdemeanor confinement sentence of 36 months" and "was sent to prison and sentence was terminated court ordered by judge but not released" and he "was sent to Bladen County." (Compl. [Doc. #2] at 4.) Plaintiff further explains that in January 2016, he "was given a 36 month sentence misdemeanor confinement for DWI and DWLR and placed on probation" and went to court on May 1, 2018 for an alleged probation violation. (Compl. at 5-6.) Plaintiff alleges that Sargeant Kim "rushed through paperwork" and sent him to "prison not misdemeanor confinement." Plaintiff contends that he was supposed to be "released 5-14-18 court ordered termination signed by Judge" but Sargeant Laura did not release him and instead held him until Lieutenant Knight came back on Monday. Plaintiff alleges that Lieutenant Knight told him his "papers were in order and he'd be back to cut me loose" but then instead he was transferred to Bladen County on a DWI sentence of 36 months. (Compl. at 6.)

These claims are unclear, but on review are the same as the claims discussed in 1:23CV294. As explained in that case, Plaintiff alleged that in January 2016, he was sentenced in Scotland County to 36 months confinement for Driving While Impaired (DWI) and 120 days for Driving While License Revoked (DWLR), both suspended. The suspended sentences were activated on May 1, 2018 based on a violation of release conditions. Plaintiff alleged that these sentences were run concurrently and were designated as a "misdemeanor confinement." Plaintiff alleged that during the violation proceeding on May 1, 2018, the courtroom clerk in

4

Scotland County "mistakenly put D.O.C. [Department of Corrections] on my commitment papers," and as a result he was mistakenly sent to prison (a state correctional institute) on May 3, 2018, rather than the county jail. Plaintiff further alleged that the mistake was discovered a few days later, and on May 14, 2018, he was picked up from the correctional institute with a direction to "release [him] if there was no other charges to hold [him]," but rather than being released, he was taken to another county jail and then held in custody for an additional 32 months on the 3-year DWI sentence. [2]

In the present Complaint, as in the prior cases, Plaintiff brings claims for "Unlawful Imprisonment and Double Jeopardy," and specifically names Sergeant Kim, Sergeant Laura, and Lieutenant Knight, all as jailers at the Scotland County jail.

To the extent Plaintiff purports to bring claims against these Defendants in their official capacities, Plaintiff has not alleged that his claims relate to an injury that resulted from an official policy or custom implemented by Scotland County or the Scotland County Sheriff. Further, to the extent Plaintiff may have intended to assert claims against Defendants in their

---

[2] Under the relevant state statute, "a person sentenced to imprisonment of any duration for impaired driving under G.S. 20-138.1 . . . shall be committed to the Statewide Misdemeanant Confinement Program established under G.S. 148-32.1." N.C. Gen. Stat. § 15A-1352(f). The sentence for a Level 1 Aggravated DWI under § 20-138.1 is a minimum of 12 months to a maximum of 36 months, and a defendant "shall not be eligible for parole" but "shall be released from the Statewide Misdemeanant Confinement Program on the date equivalent to the defendant's maximum imposed term of imprisonment less four months and shall be supervised by the Division of Community Supervision and Reentry" for those four months. N.C. Gen. Stat. § 20-179(f3). Thus, for his 36-month Level 1 Aggravated DWI sentence, Plaintiff would not have been eligible for parole and would have been detained for 32 months in the misdemeanant confinement program, followed by a 4-month term of supervision. As previously set out in the Court's Order and Recommendation in Freeman v. Scotland Cnty., Case No. 1:22CV653 (M.D.N.C. Dec. 30, 2022), the North Carolina misdemeanant confinement program designates to counties the responsibility for housing certain inmates in local facilities, with available space coordinated by the North Carolina Sheriff's Association, but also allows for transfer to the Department of Adult Corrections. See Freeman v. Scotland Cnty., No. 1:22CV653, 2022 WL 21827483 at *3, n. 3 (M.D.N.C. Dec. 30, 2022), report and recommendation adopted, No. 1:22CV653, 2023 WL 8604259 (M.D.N.C. Mar. 15, 2023); see also N.C. Gen. Stat. § 15A-1352, § 148-32.1. The designation to the misdemeanant confinement program would not affect the length of the sentence.

individual capacities, Plaintiff has not set out factual allegations that would plausibly establish a violation of his constitutional rights by these Defendants. As to Defendant Kim, Plaintiff alleges that following the sentencing proceeding on May 1, 2018, Sgt. Kim "rushed through paperwork" and sent him to prison rather than a county jail. Plaintiff further contends that he was ordered released and that Sgt. Laura did not release him until Lt. Knight came back on duty on Monday. Plaintiff alleges that when Lt. Knight came on duty, he initially told Plaintiff that his "paperwork was in order" and that "he would be back to cut [Plaintiff] loose." However, Plaintiff alleges that when Lt. Knight returned, Plaintiff was transferred to Bladen County Jail on the DWI offense on the 36-month sentence. Thus, all of Plaintiff's claims relate to jail officials confining him based on the 36-month DWI judgment, with Sgt. Kim taking him to prison, Sgt. Laura holding him on the charges at the local jail, and Lt. Knight sending him to Bladen County Jail on those charges, all based on the state court judgment and related directions for his service of that sentence.

These contentions would not form a basis for a § 1983 claim for "unlawful imprisonment and double jeopardy." Plaintiff appears to be contesting the validity of the DWI judgment and his confinement on that 3-year sentence, and he seeks damages for being in jail for the 32 months that he served on that sentence. His prior cases included the state court orders, signed by a state court judge, ordering him to serve 3 years imprisonment on the violation of conditions of release on the DWI sentence, and 120 days concurrent on the DWLR sentence. Plaintiff cannot bring a § 1983 claim against local jail officials for confining him on a state court judgment as a way to try to collaterally attack or undermine that state

6

court judgment.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).[3]  Moreover, the question of where he served the sentence, whether in prison or in a local jail, was a matter of state law, and would not be the basis for a federal constitutional claim.  Therefore, Plaintiff's claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted, based on the analysis set out above and in Case No. 1:23CV294 and 1:24CV204.

Based on the above analysis, Plaintiff's request to proceed in forma pauperis should not be approved, with the exception that in forma pauperis status shall be granted for the sole purpose of entering this Order and Recommendation.

IT IS THEREFORE ORDERED that in forma pauperis status be granted for the sole purpose of entering this Order and Recommendation.

---

[3] In his Complaint, Plaintiff references a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, filed in the Eastern District of North Carolina, 5:19-hc-2104.  That Petition raised the same claims raised here, and Plaintiff's attachments in that case include the relevant state court judgments.  These judgments reflect that Plaintiff was convicted of a DWI (Level 1 Aggravated) on January 20, 2016, with a 3-year minimum sentence activated on May 1, 2018 pursuant to a probation revocation.  State records filed in that habeas case reflect that Plaintiff was originally sent to Scotland Correctional Institute but was released from that correctional facility on May 14, 2018, and instead served the remainder of his sentence at Bladen County Detention Center, which appears consistent with the misdemeanant confinement program.  The records show that the state calculated Plaintiff's sentence on the DWI conviction as an active 3-year sentence, beginning May 1, 2018, with a projected release date of December 31, 2020, for a total of 32 months consistent with N.C. Gen. Stat. § 20-179(f3).  Plaintiff's filings in that case reflect that North Carolina Prisoner Legal Services looked into Plaintiff's claims in October 2018 and did not find any problems with the sentence or where he was serving his time, other than the fact that he was missing approximately 8 days of jail credit (Letter [Doc. #28-1 at 5] in 5:19-hc-2104-FL (E.D.N.C.)).  The habeas petition was ultimately dismissed based on Plaintiff's failure to exhaust his remedies in state court (Order [Doc. #33] in 5:19-hc-2104-FL (E.D.N.C.)).

IT IS RECOMMENDED that Plaintiff's claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted, based on the analysis set out above and in Case No. 1:23CV294 and 1:24CV204.

This, the 8th day of April, 2025.

/s/ Joi Elizabeth Peake
Joi Elizabeth Peake
United States Magistrate Judge